# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LERAY HAYNES,

    Plaintiff,

    v.                                            Case No. 07-C-0305

HALO DELIVERY SERVICES, INC.

    Defendant.

## DECISION AND ORDER

## NATURE OF THE CASE

Plaintiff Leray Haynes, who is proceeding pro se, filed this action against his former employer, the defendant Halo Delivery Services, Inc. (Halo Delivery), alleging that the defendant discriminated against him on the basis of his race. The plaintiff's discrimination claim based on race is brought pursuant to Title VII of the Civil Rights, 42 U.S.C. § 2000 et seq., as amended. (Title VII). He also cites 42 U.S.C, § 1981 as a basis for his action. In addition, the plaintiff alleges that the defendant "violated the Public Policy of this state, including The Wisconsin Fair Employment Practices Act." (Complaint at 6).

The court has jurisdiction over the plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331 because the matter arises under a federal statute. Venue is proper under 28 U.S.C. § 1391. Furthermore, to the extent the plaintiff is asserting a state common claim, the court has supplemental jurisdiction over such common law claim pursuant to 28 U.S.C. § 1367. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

The defendant has filed a motion for summary judgment and the plaintiff has filed his response, including exhibits, in opposition to the motion. The plaintiff has not filed a response to the defendant's proposed findings of fact as required by Civil Local Rule 56.2(b) (1); see also, Rule 56. The motion is fully briefed and will be addressed herein.

## MOTION FOR SUMMARY JUDGMENT

### Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant.

In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment . . . upon motion, against a party who fails to

make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56 [e]). Federal Rules of Civil Procedure 56(e) expressly provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

See also, Halloway v. Milwaukee County, 180 F.3d 820, 827 n.9 (7th Cir. 1999) (upholding district court's exclusion on summary judgment of portions of affidavit as hearsay). See Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.") Affidavits based on "information and belief" - facts that the affiant believes are true, but which the affiant does not know are true, are not proper. Toro Co. v. Krouse, Kern & Co. Inc., 827 F.2d 155, 162-63 (7th Cir. 1987).

### **RELEVANT UNDISPUTED FACTS[1]**

Defendant Halo Delivery Services, Inc. (Halo Delivery) was a small local trucking company in Milwaukee, Wisconsin, started in January 2004 by sole owners, James and

---

[1] The relevant facts are taken from the defendant's proposed findings of fact which are not disputed and the undisputed and relevant portions of the plaintiff's submissions in opposition to the summary judgment motion.

3

Lori Hanson. The company was in operation until November 2007. On average, the company employed approximately 20 to 24 people at any given time in the few years prior to November 2007. Lori Hanson served as president of Halo Delivery and her husband, James Hanson, was the vice president of the company.

Prior to founding Halo Delivery, James Hanson started his own separate company called J.D. Hanson's, Inc., on September 21, 2000. On December 16, 2002, the plaintiff, who is African American, was hired by J.D. Hanson's, Inc. to work as a semi-truck driver. When James and Lori Hanson founded Halo Delivery, the plaintiff was hired and transferred to the new company. The plaintiff was an at-will employee of Halo Delivery. His employment was terminated on October 12, 2005. Pam Bazan and her daughter, Darci Bazan, were Halo Delivery's two dispatchers at the time of the plaintiff's termination.

In about October of 2004, Darci Bazan had complained to Lori and James Hanson that the plaintiff had approached her at work and, while discussing her music, said he was going to be staying in a hotel that night and that he was going to be lonely. He told her that if she wanted to, she could bring her guitar and play songs for him. The Monday following the plaintiff and Ms. Bazan's conversation, she found a note in the plaintiff's paperwork containing his phone number and telling her to call him.

When advised of the conversation, James Hanson was very upset and was prepared to terminate the plaintiff. After Mr. and Mrs. Hanson and Darci Bazan discussed the situation, it was agreed that Mr. Hanson would talk to the plaintiff about this incident and tell him that if it happened again, he would be terminated. Mr. Hanson then told the plaintiff to "keep it professional" at work. (Affidavit of James Hanson [Hanson Aff.] ¶ 16; Deposition of James Hanson [Hanson Dep.] at 75. At that time, Mr. Hanson did not tell the plaintiff that Darci Bazan had complained about sexual harassment since he felt that the plaintiff knew

4

what they were talking about and they did not need to go into detail about it. (Hanson Aff. ¶ 16; Hanson Dep. at 74-75.

On October 11, 2005, Darci Bazan was working late at Halo Delivery. She was the only employee at work at about midnight when she heard the plaintiff come back to the facility from his first set of pick-ups and deliveries for the night. The plaintiff went into the drivers' room physically located near Ms. Bazan's office. He then came into her office to ask a question about work and asked her to get together with him. He said that he would take her to a nice fancy hotel, they would use protection and no one would know. Ms. Bazan refused the invitation and, when questioned, she told the plaintiff that she would not tell Mr. Hanson about what had occurred. Another driver came into the facility and the plaintiff left the facility about 12:30 or 12:45 a.m.

At about 9:30 a.m. on October 12, 2005, Lori Hanson was speaking with Pam Bazan in Pam Bazan's office at Halo Delivery when Darci Bazan came into the office and began to cry. When questioned about what was wrong, Darci Bazan told them that the night before while she was working alone at the facility, the plaintiff came into the facility around midnight after finishing the first part of his deliveries. The plaintiff then asked Darci Bazan to have sex with him, told her that he would take her to a hotel room, that they would use protection, and that no one would find out about it. At the time, Darci Bazan was 23 years old and the plaintiff was 54 years old.

Mrs. Hanson went to get her husband and brought him to the office to speak with Darci Bazan. Ms. Bazan, who was still crying, told Mr. Hanson that the plaintiff approached her the night before about having sex with him while she was working alone at Halo Delivery. She also told Mr. and Mrs. Hanson that she had been afraid that the plaintiff was not going to leave and that she was afraid that things were going to get worse. Ms. Bazan

5

then told Mr. and Mrs. Hanson that another Halo Delivery truck driver, Ted Wright, came in and the plaintiff left the facility.

After speaking with Darci Bazan, Mr. and Mrs. Hanson reviewed the plaintiff's and Mr. Wright's pick-up and delivery schedules from the night of October 11-12, 2005, and the date and time-stamped high speed security video camera footage from inside the facility from approximately 12:00 a.m. until 1:00 a.m. on October 12, 2005. There is no sound on the security video camera footage. (Hanson Aff. ¶ 9). The review of the plaintiff's Daily Run Sheet for October 11-12, 2005, showed that the plaintiff was at the Halo Delivery facility from 12:06 a.m. to 12:47 a.m. after the first part of his run and was back at the facility at the end of his shift from 7:55 a.m. to 8:22 a.m.

The date and time stamped security video camera footage showed that the plaintiff came back to the Halo Delivery facility at around midnight when Darci Bazan was alone at the facility. The video footage also showed that the plaintiff went into the back office where Ms. Bazan was working and that he was in the office for some time before going into the drivers' room. He left the facility at about 12:45 a.m. The video camera footage also showed that Mr. Wright showed up at the facility and that the plaintiff left shortly after Mr. Wright's arrival.

The plaintiff arrived at Halo Delivery about 5:00 p.m. on October 12, 2005. He met with Mr. and Mrs. Hanson in Mr. Hanson's office and was told that they had a complaint against him. They also said that they had reviewed a video and that they had to have a safe workplace for their employees. Mr. Hanson told the plaintiff that he had two choices. He could either voluntarily resign or be terminated. When the plaintiff refused to resign, Mr. Hanson terminated him and escorted the plaintiff out of the building.

6

On October 12, 2005, Mr. and Mrs. Hanson asked Darci Bazan to put in writing what had occurred with the plaintiff. She submitted a written complaint to them on October 25, 2005. Darci Bazan and Mr. and Mrs. Hanson deny that there was any untruthful plan or scheme to get the plaintiff fired.

James Hanson is not aware of any incident where the plaintiff or any other employee of Halo Delivery or J.D. Hanson's, Inc. complained to him about having to pick-up and/or deliver hazardous materials in his or her truck without the proper paperwork required by the Department of Transportation in violation of United States Department of Labor regulations. Lori Hanson likewise is unaware of any such complaint being made to her about having to pick-up and/or deliver hazardous materials without the proper paperwork required by DOL regulations.

## **ANALYSIS**

In moving for summary judgment, the defendant states that the plaintiff cannot establish a prima facie case of race discrimination under Title VII. Moreover, even if he could meet the standard to show a prima facie case, the defendant asserts that the plaintiff has no evidence of pretext to refute defendant Halo Delivery's legitimate, non-discriminatory business reasons for his termination. The defendant also maintains that the plaintiff cannot show a state common law wrongful discharge claim predicated on the Wisconsin Fair Employment Law (WFEA) because WFEA does not cover such a claim and, regardless, the plaintiff withdrew all WFEA claims against the defendant with the Wisconsin Equal Rights Division (ERD) on November 30, 2006. The defendant references the Affidavit of James Hanson, ¶ 50 and Exhibit D attached thereto.

The defendant also asserts that to the extent the plaintiff is asserting a state common law wrongful discharge claim predicated on retaliation for alleged complaints

7

about Department of Transportation violations, such claim must be brought under the Surface Transportation Assistance Act of 1982 (STAA) through the United States Department of Labor's (DOL) administrative procedures within 180 days of the alleged violation. The defendant states that the plaintiff did not file a complaint under STAA with the DOL.

In opposing the motion, the plaintiff asserts that he has been subjected to racial discrimination by the defendant. He maintains that the Hansons were involved in "criminal activity" with the defendant trucking company and when he confronted the Hanson's about their unlawful activities, the Hansons decided to retaliate against him by terminating his employment. (Affidavit of Leray Haynes [Haynes Aff.] ¶ 8). The plaintiff states that the defendant and its lawyers lied and filed false and misleading documents with the court designed to violate his civil rights. He claims that he was terminated for racial reasons.

The plaintiff does not challenge or address the defendant's assertion that he withdrew his WFEA claim as evidenced by Exhibit D of the affidavit of James Hanson. "The exclusive means of asserting a WFEA claim is through the Department of Workforce Development's Equal Rights Division." Aldrich v. Labor and Industry Review Com'n., 310 Wis.2d 796, 751 N.W. 2d 866, 869 (Wis. App. 2008) (citing Waid v. Merrill Area Public Schs., 91 F.3d 857, 866 [7th Cir. 1996] ["Wisconsin courts have held that the Fair Employment Act does not create a private right of action in court and that all claims under it must be brought under the Equal Rights Division or not at all."] [citation omitted]). Since WFEA does not create a private right of action and the plaintiff's claim under the Wisconsin Fair Employment Act has been withdrawn, the claim is not properly before the court and need not be addressed.

8

At the outset, the court notes that in the plaintiff's complaint, he claimed that African-American drivers at Halo Delivery were paid less than their white counterparts and that the defendant engaged in a fraudulent medical insurance scheme. The defendant, in its proposed findings of fact, stated that Halo Delivery workers were paid based on their length of service with the company. Additionally, the defendant stated that the plaintiff never received health insurance through the defendant. The plaintiff did not address these allegations in response to the defendant's summary judgment motion and has provided no evidence to support them. Accordingly, the claims related to pay inequity and a fraudulent medical insurance scheme will not be addressed.

With respect to any claim of retaliatory wrongful discharge predicated upon retaliation for allegedly complaining about violations of Department of Transportation regulations, such claim must be brought under the Surface Transportation Assistance Act (STAA), 49 U.S.C.A. § 31105, through the Department of Labor. The plaintiff did not allege a claim of retaliation under STAA. Moreover, under the STAA, a plaintiff must file a complaint with the Secretary of Labor within 180 days after the alleged "discharge" or "discrimination" occurred. § 31105(b)(1). Because the plaintiff never filed a complaint under the STAA, the court has no jurisdiction over the plaintiff's retaliatory discharge claim.

Title VII of the United States Code makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a)(1). There are two ways for a plaintiff to establish discrimination, the "direct method" and the "indirect method." "The 'direct method' . . . requires the plaintiff to put forth evidence that demonstrates that he was a member of a protected class and 'as a result suffered the adverse employment action of which he

9

complains.'" Burks v. Wisconsin Dept. of Transp., 464 F.3d 744, 751 n.3 (7th Cir. 2006) (quoting Sylvester v. SOS Children's Villages Illinois, Inc., 453 F.3d 900, 902 n.3 [7th Cir. 2006]) (emphasis in original). Thus, under the direct method, "a plaintiff must come forward either with direct or circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'" Burks, 464 F.3d at 751 (quoting Blise v. Antaramian, 409 F.3d 861, 866 [7th Cir. 2005]). The "indirect method" requires that the plaintiff apply the burden-shifting method outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); see also, Kirk v. Fed. Prop. Mgmt. Corp., 22 F.3d 135, 138 (7th Cir. 1994).

Initially, the burden is on the plaintiff to establish a prima facie case of discrimination. To establish a prima facie case, the plaintiff must show: 1) that the plaintiff belongs to a protected group; 2) that the plaintiff performed the job satisfactorily; 3) that the plaintiff suffered an adverse employment action; and 4) that the employer treated similarly situated employees outside the protected group more favorably. If the plaintiff establishes all the elements of the prima facie case, the plaintiff raises an inference of discrimination. Burks, 464 F.3d at 750-51; Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir. 1994). "The failure to establish any single element of the prima facie case dooms a discrimination claim." Williams v. Airborne Exp., Inc., 521 F.3d 765, 768 (citing Bio v. Fed. Express Corp., 424 F. 3d 593, 596 [7th Cir. 2005]).

Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the challenged employment decision. Burks, 464 F.3d at 751. Finally, if the defendant produces a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff

10

to show that such reason was pretextual. See Scaife v. Cook County, 446 F.3d 735, 739-40 (7th Cir. 2006); Kirk, 22 F.3d at 138.

The plaintiff may prove pretext directly by showing that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason [for the adverse employment action] is unworthy of credence." Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir. 1991) (citing Burdine, 450 U.S. 248, 256 [1981]). The court must look to "whether the employer's reasons for its decision are honest and genuinely motivated." Burks, 464 F.3d at 754. The court is "not concerned with whether or not the employer's actions were 'mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons.'" Id. (quoting Jordan v. Summers, 205 F.3d 337, 343 [7th Cir. 2000]). Ultimately, the plaintiff must establish that he would not have been fired "but for" his race. Billups, 922 F.2d at 1303.

In this case, the plaintiff is proceeding under the indirect method of proof. There is no dispute that the plaintiff is a member of a protected class and that he suffered an adverse employment action when he was terminated. The defendant contends that the plaintiff failed to meet its legitimate job expectations because of his sexual harassment of a co-worker. Other than the incidents with Ms. Bazan, there is no evidence that the defendant was not performing his job satisfactorily. The court will focus on the fourth element of a prima facie case -- whether the defendant treated similarly situated individuals who were not in the protected class more favorably than the plaintiff. See Lenoir, 13 F.3d at 1332.

For a person to be similarly situated to the plaintiff, the plaintiff must show that the person is "directly comparable" to him "in all material respects." Burks, 464 F.3d at 751 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 [7th Cir.2002]). "Factors

11

relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." Id.

The plaintiff maintains that he was treated differently than white employees. However, he has not identified any individual at Halo Delivery who was not in the protected class whom he claims was similarly situated to him. The plaintiff has not shown that a white employee accused of sexual harassment was treated more favorably than he was. Because the plaintiff has not demonstrated that a similarly situated employee outside of the protected class was treated more favorably, he has failed to establish a prima facie case of discrimination based on race.

Even if the court were to conclude that the plaintiff had established a prima facie case of discrimination, the defendant has established a legitimate, non-discriminatory reason for terminating the plaintiff. The undisputed facts establish that in October 2004, Darci Bazan complained to Lori and James Hanson that the plaintiff had asked her to go to hotel with him and left her with a note with his hotel room number and telephone numbers, telling her to call him. Mr. Hanson spoke to the defendant, warned him about his behavior and told him to be professional at work.

The undisputed facts also show that on October 12, 2005, the plaintiff approached Darci Bazan about midnight while she was alone at Halo Delivery and asked her to have sex with him. Ms. Bazan was very upset and concerned for her safety. She reported the incident to the Hansons and, as a result, Mr. Hanson terminated the plaintiff's employment for sexual harassment of another employee. Given the plaintiff's history of sexual harassment, the defendant had a legitimate, non-discriminatory reason for terminating the plaintiff. The plaintiff has presented no evidence to show that the defendant's reason for

12

terminating him was based on pretext. Therefore, the plaintiff has not stated a viable claim against the defendant under Title VII.

In sum, the court concludes that the plaintiff has failed to establish a prima facie case of racial discrimination under Title VII. Moreover, even if the court were to conclude that the plaintiff had established a prima facie case, he has not presented evidence to show that the defendant's stated reason for his termination – his sexual harassment of a co-worker -- was pretextual. Accordingly, the defendant is entitled to summary judgment on the plaintiff's discrimination claim based on race.

The plaintiff also cites 42 U.S.C. section 1981 as a basis for his claims. Section 1981 addresses racial discrimination in contractual relationships. To establish a claim under § 1981, a plaintiff must show that 1) he was a member of a racial minority, 2) the defendant had an intent to discriminate on the basis of race, and 3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. the making and enforcing of a contract). Morris v. Office Max, Inc., 89 F.3d 411, 413-14 (7th Cir. 1996). As defined in § 1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Although § 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical. See Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 940 (7th Cir. 1996). A plaintiff in a discrimination case may produce either direct evidence or indirect evidence of discrimination. Under the indirect method, the burden-shifting method outlined by the Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v.

Burdine, 450 U.S. 248 (1981), must be applied. See also, Kirk v. Federal Property Management Corp., 22 F.3d 135, 138 (7th Cir. 1994).

Assuming without deciding that an at-will employee may maintain a claim under § 1981 for racially discriminatory practices, the plaintiff's §1981 claim fails for the same reasons that his Title VII claim fails. Under the burden shifting method set out by the Supreme Court, the plaintiff has not established a prima facie case of racial discrimination and, even if he had, he has not presented any evidence to show that the defendant's proffered reason for his termination was pretextual. Accordingly, the plaintiff has not established that he was discriminated against based on his race in violation of § 1981.

In sum, for the reasons stated herein, the defendant's motion for summary judgment on the plaintiff's claims will be granted.

## **CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 96) be and hereby is **granted.**

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge